# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **DERRICK MCMULLIN,** )   <br> ) <br> **Plaintiff,** )  <br> ) <br> v.   )  <br> ) <br> **PRINCE METAL STAMPING** ) <br> **USA, INC.,** ) <br> ) <br> **Defendant.** ) | **Civil Action No.:** <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Comes now Plaintiff, Derrick McMullin ("Plaintiff" or "Mr. McMullin"), by and through his undersigned counsel, hereby files this Complaint for relief against the Defendant Prince Metal Stamping USA, Inc. ("Prince") and alleges as follows:

### NATURE OF THE CASE

1. This is a lawsuit brought by the Plaintiff, Derrick McMullin, seeking permanent relief from unlawful discriminatory and retaliatory practices committed against him by Defendant Prince. The practices committed by the Defendant violate Plaintiff's rights secured by:

   a. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*; and

1

b.  42 U.S.C. § 1981.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, *et seq.*

3. Plaintiff timely filed a charge of discrimination against Defendant Prince with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2019-03773.  **(Attached herein as Exhibit A).**

4. On March 17, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. This right to sue was received by Plaintiff via U.S. Mail on or about March 19, 2020. **(Attached herein as Exhibit B).**

5. Plaintiff timely filed this action within ninety (90) days of his receipt of the Notice of Right to Sue pursuant to Title VII.

6. Defendant is located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Derrick McMullin is an African-American male over the age of nineteen years and a citizen of Calhoun County, Alabama.  Plaintiff was employed

by Defendant Prince from March 24, 2019, until he was terminated on August 20, 2019.

8. Defendant Prince is a company that manufactures metal automotive parts. At all times relevant to this action, Defendant Prince operated a facility located in Gadsden, Alabama.

9. Defendant Prince engaged in an industry affecting commerce and has fifteen (15) or more employees or employers within the meaning of 42 U.S.C. § 2000e(b), (g), and (h).

## FACTUAL ALLEGATIONS

10. Plaintiff is a black male.

11. Plaintiff was hired by Defendant on March 24, 2019, as an Area Manager for the Welding Assembly Department.

12. At the time of Plaintiff's hire, another black employee was also hired for an Area Manager position in another department. At this time, Plaintiff and the other black Area Manager were the only members of management that were a race other than white.

13. Defendant did not provide Plaintiff or the other black Area Manager training for their positions; however, Plaintiff was able to self-train to perform position through independent research.

14. Unlike Plaintiff and the other black Area Manager, Defendant provided training opportunities to the white Area Managers and continued to train newly hired white Area Managers after their hire.

15. Plaintiff progressed quickly and his progression was documented by his crew's "overall equipment effectiveness" (OEE) rate. After Plaintiff was hired, his crew's OEE was consistently higher than the other departments and the other crews within his department.

16. Around June 2019, Defendant hired a new white Plant Manager, Chris Danewood.

17. Mr. Danewood made several racially offensive comments about Plaintiff's ethnic hair and referred to him as a boy.

18. The white Plant Superintendent, Brian Ciampini, also made racially offensive and stereotypical comments about Plaintiff's body.

19. On August 15, 2019, Plaintiff was sick, so he called the employee call-in line prior to his shift and reported that he would be absent on August 15, 2019 and August 16, 2019. Plaintiff also provided Human Resources a doctor's excuse for his absence.

20. When Plaintiff returned to work, Mr. Danewood falsely accused him of having a no call/no show on the days that he had called in. Plaintiff told the Mr.

Danewood that he had called in before missing his shift. Mr. Danewood then falsely accused Plaintiff of having a low OEE rate.

21.  After asserting the false accusations, Mr. Danewood went to Human Resources and personally reviewed Plaintiff's call-in records.

22.  Mr. Danewood demanded that the Human Resources Manager assign two (2) disciplinary points to Plaintiff's personnel file. The Human Resources Manager refused because Plaintiff had used the proper call-in procedure.

23.  When Mr. Danewood returned from Human Resources, Plaintiff asked about his OEE rate and requested that the OEE for his crew be calculated separate from the other Welding Assembly Department crews. Mr. Danewood refused to provide this information.

24.  Plaintiff then asked Mr. Ciampini for a current calculation of his crew's OEE, but Mr. Ciampini also refused to provide the calculation.

25.  On August 19, 2019, Plaintiff submitted a leave of absence form indicating that he would be absent the following morning.

26.  Although he submitted a leave request, Plaintiff also called the employee call-in line and reported that he would be absent prior to his shift.

27.  When Plaintiff returned to work on the afternoon of August 20, 2019, Mr. Danewood terminated his employment for purported poor performance.

28. At the time of Plaintiff's termination, he was the only non-white member of management.

29. Prior to his termination, Plaintiff had not received any disciplinary write ups or performance evaluations indicting issues with his performance.

30. Similarly situated employees outside of Plaintiff's protected class were treated more favorably.

31. Upon information and belief, Dale Schaeffer, a white Area Manager, had consistently low OEE ratings, but was not disciplined or terminated.

32. Upon information and belief, Defendant has progressive discipline policies that applied to all employees including the Plaintiff.

33. Upon information and belief, Defendant failed to apply its progressive discipline policies to Plaintiff's termination and applied these policies to him in a less favorable manner than other employees outside of his protected class.

34. Plaintiff was discriminated against and treated differently by Defendant because of his race, African-American, in violation of Title VII and 42 U.S.C. § 1981.

## COUNT ONE — TITLE VII RACE DISCRIMINATION

35. This is a claim against Defendant to redress the unlawful employment practice of racial discrimination protected by Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

36. This is a claim against Defendant for the intentional and illegal discrimination of Plaintiff, because of his race (black).

37. Plaintiff is black and a member of a protected minority class.

38. Plaintiff was hired by Defendant on March 24, 2019, as an Area Manager for the Welding Assembly Department.

39. Defendant did not provide Plaintiff training for his position; however, Plaintiff was able to figure out how to do his position through independent research.

40. Defendant provided training opportunities to the white Area Managers hired before Plaintiff and continued to train the white Area Managers hired after Plaintiff.

41. Around June 2019, Defendant hired a new white Plant Manager, Chris Danewood.

42. Mr. Danewood made several racially offensive comments about Plaintiff's ethnic hair and referred to him as a boy.

43. The white Plant Superintendent, Brian Ciampini, made racially offensive and stereotypical comments about Plaintiff's body.

44. On August 15, 2019, Plaintiff was sick, so he followed the correct call-in procedure and reported that he would be absent on August 15, 2019 and August 16, 2019. Plaintiff also provided Human Resources a doctor's excuse for his absence.

45. When Plaintiff returned to work, the Mr. Danewood accused him of having a no call/no show on the days that he had called in. Mr. Danewood also falsely accused Plaintiff of having a low OEE rate.

46. Mr. Danewood demanded that the Human Resources Manager assign two (2) disciplinary points to Plaintiff's personnel file for his absence. The Human Resources Manager refused, because Plaintiff had used the proper call-in procedure.

47. Plaintiff asked Mr. Danewood about his OEE rate and requested that the OEE for his crew be calculated separate from the other Welding Assembly Department crews. Mr. Danewood refused to provide this information.

48. Plaintiff also asked Mr. Ciampini for a current calculation of his crew's OEE, but Mr. Ciampini also refused to provide the calculation.

49. On August 19, 2019, Plaintiff followed the proper leave of absence procedure and was absent. When Plaintiff returned to work on the afternoon of August 20, 2019, Mr. Danewood terminated his employment for purported poor performance.

50. At the time of Plaintiff's termination, he was the only non-white member of management.

51. Prior to his termination, Plaintiff had not received any disciplinary write ups or performance evaluations indicting issues with his performance.

52. Similarly situated employees outside of Plaintiff's protected class were treated more favorably.

53. Upon information and belief, Dale Schaeffer, a white Area Manager, had consistently low OEE ratings, but was not disciplined or terminated.

54. Upon information and belief, Defendant has progressive discipline policies that applied to all employees including the Plaintiff.

55. Upon information and belief, Defendant failed to apply its progressive discipline policies to Plaintiff's termination and applied these policies to him in a less favorable manner than other employees outside of his protected class.

56. As a proximate result of Defendant's unlawful and intentional discrimination, Plaintiff suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

57. Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT TWO — SECTION 1981 RACE DISCRIMINATION

58. This is a claim against Defendant to redress the unlawful employment practice of racial discrimination protected by 42 U.S.C. §1981.

59. This is a claim against Defendant for the intentional and illegal discrimination of Plaintiff, because of his race.

60. Plaintiff is black and a member of a protected minority class.

61. Plaintiff was hired by Defendant on March 24, 2019, as an Area Manager for the Welding Assembly Department.

62. Defendant did not provide Plaintiff training for his position; however, Plaintiff was able to figure out how to do his position through independent research.

63. Defendant provided training opportunities to the white Area Managers hired before Plaintiff and continued to train the white Area Managers hired after Plaintiff.

64. Around June 2019, Defendant hired a new white Plant Manager, Chris Danewood.

65. Mr. Danewood made several racially offensive comments about Plaintiff's ethnic hair and referred to him as a boy.

66. The white Plant Superintendent, Brian Ciampini, made racially offensive and stereotypical comments about Plaintiff's body.

67. On August 15, 2019, Plaintiff was sick, so he followed the correct call-in procedure and reported that he would be absent on August 15, 2019 and August 16, 2019. Plaintiff also provided Human Resources a doctor's excuse for his absence.

68. When Plaintiff returned to work, the Mr. Danewood accused him of having a no call/no show on the days that he had called in. Mr. Danewood also falsely accused Plaintiff of having a low OEE rate.

69. Mr. Danewood demanded that the Human Resources Manager assign two (2) disciplinary points to Plaintiff's personnel file for his absence. The Human Resources Manager refused, because Plaintiff had used the proper call-in procedure.

70. Plaintiff asked Mr. Danewood about his OEE rate and requested that the OEE for his crew be calculated separate from the other Welding Assembly Department crews. Mr. Danewood refused to provide this information.

71. Plaintiff also asked Mr. Ciampini for a current calculation of his crew's OEE, but Mr. Ciampini also refused to provide the calculation.

72. On August 19, 2019, Plaintiff followed the proper leave of absence procedure and was absent. When Plaintiff returned to work on the afternoon of August 20, 2019, Mr. Danewood terminated his employment for purported poor performance.

73. At the time of Plaintiff's termination, he was the only non-white member of management.

74. Prior to his termination, Plaintiff had not received any disciplinary write ups or performance evaluations indicting issues with his performance.

75. Similarly situated employees outside of Plaintiff's protected class were treated more favorably.

76. Upon information and belief, Dale Schaeffer, a white Area Manager, had consistently low OEE ratings, but was not disciplined or terminated.

77. Upon information and belief, Defendant has progressive discipline policies that applied to all employees including the Plaintiff.

78. Upon information and belief, Defendant failed to apply its progressive discipline policies to Plaintiff's termination and applied these policies to him in a less favorable manner than other employees outside of his protected class.

79. As a proximate result of Defendant's unlawful and intentional discrimination, Plaintiff suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

80. Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS.**

DONE this 15th day of June, 2020.

                          Respectfully Submitted,

                          */s/ William B. Beckum*
                          William B. Beckum (ASB-4222-I70B)

                          */s/ Brooke Davis*
                          Brooke Davis (ASB-6984-L36N)
                          *Attorneys for Plaintiff*

**OF COUNSEL:**

**BECKUM LAW, LLC**
3184 Cahaba Heights Road
Birmingham, Alabama 35243
Tel: (205) 588-0699


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

**Prince Metal Stamping USA, Inc.**
By Serving its Registered Agent:
Don Rodzik, Jr.
1108 Airport Industrial Dr.
Gadsden, AL 35904